Jens Soering

v.

Robert F. McDonnell,
Governor of Virginia

July 11, 2012

Case No. CL11-271

By Judge Beverly W. Snukals

The parties appeared before this Court, through counsel, for a hearing on the Rutherford Institute's Motion to appear as *amicus curiae* and the Defendant's Plea of Sovereign Immunity, Demurrer to Soering's Motion for Declaratory Judgment, and Motion to Strike. Upon reviewing the pleadings, memoranda, and hearing the arguments of counsel, the Court grants the Rutherford Institute's motion to appear as *amicus curiae* and denies the Defendant's Motion to Strike.

As to the Defendant's Demurrer, the United States is a signatory to the Council of Europe's Convention on the Transfer of Sentenced Persons ("the Convention"). The Convention establishes the procedures necessary in order for foreign nationals convicted of crimes to be transferred to a state in which the prisoner is considered a national, and Congress has passed 18 U.S.C. § 4100 *et seq.* as the enabling legislation for the Convention. Importantly, the Convention is between the United States and other foreign sovereigns, not between individual American states and foreign sovereigns. Pursuant to the terms of the Convention, a Sentencing State, here the United States, must agree to the transfer, and the Sentencing State's law governs such consent. Moreover, the Consul General of the United States has declared that the Government of the United States will not agree to a transfer unless the appropriate state level authorities, in this case Virginia, first consent.

In order for an American state to provide the necessary consent required to allow the United States Government to authorize a transfer, states must have legislation setting forth the manner in which consent may be obtained. In the Commonwealth of Virginia, Va. Code § 53.1-220 provides the necessary guidance. Section 53.1-220 states, in full:

[w]hen a treaty between the United States and a foreign country provides for the transfer to such foreign country, with the consent of the appropriate state authorities, of convicted offenders in state correctional systems who are citizens or nationals of such foreign country, the Governor is authorized, *subject to the terms of such treaty*, to act on behalf of the Commonwealth and to consent to the transfer of such convicted offenders.

*Id.* (emphasis added).

On January 12, 2010, then-Governor Kaine authorized the United States Government to begin processing the Plaintiff's application for transfer to the Federal Republic of Germany. Upon entering office, but prior to the Plaintiff's being transferred or the Federal Government's approving the Plaintiff's transfer, Governor McDonnell revoked the Commonwealth's authorization for the United States Government to proceed with the transfer. The Plaintiff has filed this action seeking redress for "the right to have the process continue to the next step of having the United States Attorney General approve or disprove the transfer." Pl. Br. in Opp. at 3.

Federal courts across the country have held that the Convention does not create a private right of action because the Convention fails to contain express language to rebut a presumption against a private right of action. *Bagguley v. Bush*, 953 F.2d 660, 662 (D.C. Cir. 1991). Consequently, prisoners do not have standing to bring a claim under either the Federal enabling legislation or the Convention challenging an action, or inaction, of the Attorney General. *Toor v. Holder*, 717 F. Supp. 2d 100, 107 (D. D.C. 2010); *Wirsz v. Sugrue*, 1:09-cv-01204-JLT HC, 2010 U.S. Dist. LEXIS 111185, at *10-15 (E.D. Cal. Oct. 8, 2010).

The Plaintiff acknowledges that he does not have a right to a transfer. Instead, he argues he was deprived of his right to have his application for transfer continue to the next level. However, "before a protected liberty interest can be said to have been created, an inmate must show that particularized standards or criteria guide the State's decision makers." *Scalise v. Thornburgh*, 891 F.2d 640, 649 (7th Cir. 1989) (internal quotations omitted). Because the Plaintiff is unable to point to any substantive directives contained in either the Convention or the Federal enabling legislation, the Plaintiff does not possess a protected liberty interests to have his application for transfer continue to the next level. *See Bagguley*, 953 F.2d at 662.

Lastly, Va. Code § 53.1-220 confines the Governor's power to consent "subject to the terms of such treaty." *Id.* Essentially, the statute, in this case, refers to the Convention. The Court notes that the Federal enabling legislation expressly prohibits a prisoner from revoking consent, but is silent as to whether a state government or the Federal Government is able to revoke consent. 18 U.S.C. § 4107(b)(4). Additionally, in his letter to Governor McDonnell confirming receipt of the Commonwealth's revocation of consent, Attorney General Holder specifically stated that nothing in the Convention or federal law prohibited the Governor from revoking consent prior to the physical transfer of the prisoner. Letter from Eric H. Holder, Jr., Attorney General of the United States, to Robert F. McDonnell, Governor of Virginia, July 6, 2010 (Ex. 3). Accordingly, the Court finds as a matter of law that Governor McDonnell did not violate Va. Code § 53.1-220 when revoking the Commonwealth's consent.

For these reasons the Court sustains the Defendant's Demurrer and dismisses with prejudice the case. Having dismissed the case based on the arguments contained in the Defendant's Demurrer, the Court does not address the Defendant's Plea of Sovereign Immunity. Pursuant to Rule 1:13, the Court dispenses with the parties' endorsement of this Order and notes the Plaintiff's objection. The Clerk is directed to forward a certified copy of this Order to the parties. It is so ordered.